UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-163-H

PATRICIA WILLIAMS                                                        PLAINTIFF

V.

EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC.                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patricia Williams ("Plaintiff") filed this lawsuit against Defendant Expeditors

International of Washington, Inc. ("Defendant") alleging violations of the Kentucky Civil Rights

Act ("KCRA") and state overtime laws.  Ky. Rev. Stat. Ann. §§ 344; 337.285.  This is an

unusual case because Plaintiff did not actually apply for nor did Defendant advertise for the

employment promotions at issue.  Defendant has now moved for summary judgment.  For the

reasons described below, the Court sustains Defendant's motion as to Plaintiff's KCRA claims

and withholds a ruling on the remaining claim.

I.

The facts stated in a light most favorable to Plaintiff follow.  Plaintiff is currently an

employee in the accounting department of Defendant, a "non-asset based service provider in the

business of international logistics, customs brokerage, distribution, and warehousing services."

Mot. for Summ. J. 2.  In 1994 Defendant attempted to reach an agreement with General Electric

("GE") to handle GE's export work at General Electric Appliance Park ("GEA Park") in

Louisville.  During Defendant's pursuit of GE's export work, Defendant offered Plaintiff a position as "Manager GEA Export Program" with responsibilities including "hiring support people, supervision of the EI team, communication with GEA team, shipment planning, [and] documentation." At the time, Plaintiff was working at Fruit of the Loom where she learned and performed export functions.  Though Defendant did not acquire GE's export work, GE did retain Defendant for other non-export work.  Plaintiff consequently accepted employment with Defendant as "General Electric Appliance Park Services Administrator," an "in-house" position at GEA Park.  Her job responsibilities in this position included service related to import, export, and foreign trade zone transactions; preparation and filing of U.S. Customs documents; work with import and export personnel; and work with Defendant's international team in various locations inside and outside the United States.  Williams Dep. Exh. 1.  On some occasions Plaintiff would also assist GE employees who were dealing with exports.

In 2004 Plaintiff took another position with Defendant in Birmingham, Alabama because she wanted to be closer to her family.  There, Plaintiff worked for Defendant at an in-house position at Saks, Incorporated dealing with imports and customs for Saks.  Not long after moving to Birmingham, Plaintiff learned that her job there would end because Saks was being sold. Plaintiff spoke to Dave Manning, Defendant's customs brokerage manager in Louisville, who asked if Plaintiff would be interested in moving back to Louisville.  Plaintiff expressed interest in returning but only if she could work for Manning.  Manning told Plaintiff that he would have to talk to Terry McElroy, the Louisville district manager at the time.  In approximately August 2005, McElroy phoned Plaintiff and said, "Come home."  According to Plaintiff, in a subsequent conversation, McElroy told Plaintiff she would work for Manning, but they did not discuss a

2

particular position.  Plaintiff says that in December 2005, she told McElroy she wanted to be an account manager working under Manning upon her return to Louisville and that McElroy said that they could talk about it, but he did not tell Plaintiff that he would find her a position as an account manager.  They did not discuss compensation.  McElroy told Plaintiff to contact him when she returned to Louisville.

When Plaintiff returned to Louisville in late January or early February 2006, she contacted Manning who told her that McElroy planned to assign her work in the accounting department.  According to Defendant, this was the only position available.  Plaintiff signed a personnel action form on February 6, 2006 indicating that her compensation status was full time non-exempt.[1]  She claims not to have known of her non-exempt status until February 24, 2006, when she received her first paycheck after returning to Louisville.  Plaintiff earned approximately $45,000 annually while working in the accounting department.

After Plaintiff returned to Louisville she expressed her interest in other employment opportunities outside the accounting department with Defendant.  McElroy responded, "We'll talk about it."  They did not discuss particular vacancies, but Plaintiff told McElroy she wanted to be an account manager and McElroy "always told" Plaintiff that "there was not anything available."

Plaintiff alleges that Defendant discriminated against her based on her age and/or sex in connection with three separate employment actions that occurred after she returned to Louisville.

---

[1]The parties use the terms "exempt" and "non-exempt" in reference to the Kentucky overtime wage laws. Ky. Rev. Stat. Ann. § 337.285. That law requires employers to pay overtime to employees who work over forty hours per week. However, certain persons (including those working in a "bona fide administrative capacity") are considered "exempt" from overtime wage laws. *See, e.g.* Ky. Rev. Stat. Ann. § 337.010(2)(a)(2). One notable difference between "exempt" and "non-exempt" employees is that "exempt" employees must be paid on a "salary or fee basis" while "non-exempt" employees may be paid by the hour. 803 Ky. Admin. Regs. 1:070 §3.

The first involved the outside hiring of John Imler in the spring or early summer of 2006. Imler was thirty-two years old at the time of his hiring.  Plaintiff initially alleged that Defendant hired Imler as a supervisor of transportation, which she believed was a salaried position.  She says that when she asked Manning why Defendant hired "from outside with no experience," Manning responded to Plaintiff, "you need to make things all right with [McElroy]." Plaintiff believes that this statement suggests that the hiring decision was "a personal issue with prejudice against me."  Defendant says that contrary to Plaintiff's assumptions, Imler was hired for an hourly position in customer service which paid approximately $26,000-$28,000 in wages and that he never received a promotion.  Plaintiff offers no evidence to the contrary on this point.

The second personnel action involved Dave Warner's promotion to an export manager in 2006 from his original position as domestic cargo services manager.  Dave Warner was approximately thirty-four years old at the time of his promotion.  Defendant says that Warner was promoted based on his background and experience and his "exceptional" performance while employed by Defendant.

The third involved Lindsay Roseberry's promotion to domestic cargo services manager. The domestic cargo services manager position was left vacant when Warner was promoted to export manager.  According to Defendant, the position was vacant for nearly one year after Warner was promoted.  Roseberry is a female who was approximately twenty-four or twenty-five years old when Defendant promoted her.  She had been working in the domestic cargo services for approximately a year and a half prior to her promotion.  Prior to working for Defendant, Roseberry had worked in retail which, according to Defendant, had provided her with

relevant experience in the form of exposure to sometimes unhappy customers, inventory

replenishment, and receipt of goods for inventory.  According to McElroy, Defendant also

considered a referral from an existing employee that had worked with Roseberry prior to

Williams' return to Louisville.

II.

The deadline for discovery has passed. Defendant now asks the Court to enter summary

judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary

judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C).

The party moving for summary judgment bears the burden of demonstrating the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving

party's burden may be discharged by demonstrating that there is an absence of evidence to

support an essential element of the nonmoving party's case for which he or she has the burden of

proof. *Id*. Once the moving party demonstrates this lack of evidence, the burden passes to the

nonmoving party to establish, after an adequate opportunity for discovery, the existence of a

disputed factual element essential to his case with respect to which he bears the burden of proof.

*Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving

party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P .56(e)). If the

record taken as a whole could not lead the trier of fact to find for the nonmoving party, the

motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio*

5

*Corp.*, 475 U.S. 574, 586 (1986).

III.

Plaintiff filed her action pursuant to the KCRA, which, in pertinent part, makes it

unlawful for an employer:

> To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

Ky. Rev. Stat. Ann. § 344.040(1). Here, Plaintiff alleges that Defendant refused to promote her

on the basis of her sex and age.  Compl. ¶ 8-11.

Kentucky courts have adopted the United States Supreme Court's framework for claims

of unlawful discrimination, which they have characterized as follows:

> First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination.

 *See, e.g., Jefferson County v. Zaring*, 91 S.W.3d 583, 590 (Ky. 2002) (internal citations

omitted). To make out a prima facie case of discrimination regarding an employer's failure to

promote, the employee-plaintiff must show that: (1) she is a member of a protected class; (2) she

was qualified for and applied for a promotion; (3) she was considered for and denied the

promotion; and (4) other employees of similar qualifications who were not members of the

6

protected class received promotions.[2]  *Cf. Kentucky Dept. of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000).

That Plaintiff did not "apply" for the particular positions at issue is not necessarily fatal to her claim.  Defendant does not have a formal application procedure for internal employees and it is undisputed that Plaintiff told McElroy that she wanted to leave the accounting department and work for Manning.  The Sixth Circuit, for example, recognizes that:

> in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not have a formal mechanism for expressing interest in the promotion.  Instead the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

*Dews*, 231 F.3d at 1022.[3]  It is undisputed that Plaintiff's case satisfies the first and fourth elements described above as she is a woman who was over forty year old at the time of the alleged discrimination and Warner and Imler are males and Warner, Imler, and Roseberry were all believed to be under forty at the time of the employment actions at issue.  The Court must analyze the other elements for each specific claim.

### A.

With respect to the entry level customer service position for which Imler was hired, the

---

[2]The Court recognizes that Plaintiff's allegations with respect to Imler's hiring and Warner's promotion implicate both age and sex discrimination while Roseberry's promotion implicates only age discrimination.  It is undisputed that in all three cases the individual who was hired/promoted was, in at least one way, not a member of the relevant protected class (male and/or under 40). For this reason, the Court focuses on the qualifications of the position at issue and the person hired/promoted as opposed to the specific type of discrimination alleged.

[3]In a recent unpublished opinion, a panel of Kentucky Court of Appeals concluded that the lack of a formal application process was not a necessary element for a prima facie discrimination case.  *See Hardison v. Acordia of Ky., Inc.*, 2006 WL 741573 (Ky. Ct. App. 2006)(surveying Title VII cases where lack of formal application process or expression of interest in a specific position was not a barrier to stating a prima facie discrimination case).

evidence in the record demonstrates that this was a non-exempt, non-supervisory position which paid considerably less than what Plaintiff earned in the accounting department.  McElroy Dep. 43.  Even accepting as true Plaintiff's contention that she was qualified for the position and that it "had a career path to jobs to which she aspired," Defendant's decision not to transfer Plaintiff to a lesser-paid entry level position simply does not constitute an adverse employment event which should be scrutinized for evidence of discrimination.  For this reason, the Court need not proceed further with analysis of Plaintiff's claim to the extent that it implicates Imler's hiring.

The Court next considers whether Plaintiff was qualified for either the export manager position to which Warner was promoted or the manager of domestic transportation position to which Roseberry was promoted.  Defendant maintains no written list of qualifications for either of these positions. Plaintiff argues that she learned and performed export functions during her previous employment at Fruit of the Loom, and that she also gained export experience during her time at GEA.  Plaintiff points out that the position Defendant originally offered her was as Manager of GEA's Export Program, although she concedes that her job description and title changed once it became clear that Defendant would not receive GE's export work.  Defendant maintains that Plaintiff lacked significant experience with export work and also lacked supervisory and domestic transportation experience.  Faced with rather limited information regarding the precise qualifications and job descriptions, and resolving all inferences in Plaintiff's favor, there is a legitimate argument that Plaintiff is objectively "qualified" for the positions at issue.  Thus, for purposes of the pending motion, the Court will assume that Plaintiff has satisfied her evidentiary burden at the summary judgment state for establishing a prima facie case.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 ("If . . . reasonable minds could

8

*differ* as to whether a preponderance of the evidence established the facts of a [Title VII] prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer.")(emphasis in original).

B.

Because Plaintiff has met her prima facie burden as to the Warner and Roseberry positions, Defendant may defend by articulating a legitimate, non-discriminatory reason for its employment decisions.  Here, Defendant says that Warner and Roseberry were promoted because "both had experience in the relevant areas and had demonstrated good performance in prior positions."  Def.'s Mot. for Summ. J. 13.  Defendant also notes that Warner had "impressive credentials" including experience at a prior employer.  *Id.*  Finally, Defendant says that Plaintiff lacked experience in supervising transportation necessary for the domestic transportation manager position and had insufficient experience to be the export manager.  These reasons and the evidence supporting them facially satisfy Defendant's burden of articulation, and Plaintiff must now provide evidence of pretext in order to survive summary judgment.  *See, e.g. Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)(noting, "defendant need not *prove* a nondiscriminatory reason for not promoting [plaintiff], but need merely *articulate* a valid rationale).

"After a defendant has provided a legitimate nondiscriminatory reason for [the adverse employment action], the *McDonnell Douglas* framework disappears . . . [and] the plaintiff must persuade the trier of fact, by a preponderance of the evidence, that the defendant unlawfully discriminated against her."  *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 493, 497 (Ky. 2005)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  Plaintiff

9

can show that Defendant's reasons for its employment decision are pretext, masking a discriminatory motive, through evidence that either: (1) the proffered reasons are false; (2) the proffered reasons did not actually motivate the decision; and (3) the plaintiff could show that the reasons given were insufficient to motivate the decision. *Williams*, 184 S.W.3d at 497 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).

Plaintiff's pretext argument is that Defendant's reasons do not adequately explain why she was not even considered for the export manager or the domestic transportation positions. However, her subjective belief as to why Defendant considered only Warner for the position to which he was promoted, and considered a few individuals, but not Plaintiff for the position to which Roseberry was promoted "is in essence a mere disagreement with the corporation's business judgment, and does not create an issue of fact." *See Johnson v. Box USA Group, Inc.*, 208 F. Supp. 2d 736, 742 (W.D. Ky. 2002)(internal citation omitted).  She must have evidence that suggests discrimination by calling into question the qualifications of Warner and Roseberry.

Here, Defendant's proffered reasons for its employment decisions do not lack merit. Plaintiff does not argue that Defendant inflated Warner's or Roseberry's qualifications. She does not challenge Defendant's characterization of Warner's "impressive" credentials, his prior experience both with Defendant and with a previous employer establishing a distribution facility. Likewise, Plaintiff offers no evidence that Roseberry's prior experience in the same department where she was promoted did not qualify her for the promotion.  There is simply no evidence that something other than Warner's or Roseberry's recognized and unrebutted qualifications motivated Defendant's decisions to promote them.  Rather, Plaintiff seems to argue that Defendant discounted or overlooked her own experience relevant to either of these positions.

10

However, this is legally insufficient where Plaintiff has failed to rebut Defendant's proffered reasons for ultimately selecting Warner and Roseberry–that is, their qualifications for the job.

Notably, even if Plaintiff were to offer evidence of pretext, she retains the ultimate burden of proof.  For example, in *Williams*, despite a finding that the plaintiff had proven a prima facie case of discrimination and had presented some evidence that the employer's proffered reasons were pretext, judgment as a matter of law was appropriate because there existed only a "weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  184 S.W.3d at 500.

As the Sixth Circuit has noted, "the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with.  Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons."  *Hartsel*, 87 F.3d at 801.  In this case, Plaintiff fails to rebut Defendant's non-discriminatory reason for its employment decisions.  In the absence of direct evidence of discrimination, Plaintiff's somewhat conclusory allegations cannot create liability under KCRA for offering a managerial positions to two undisputedly qualified employees.  Because no reasonable jury could infer illegal discrimination from the facts of this case, the Court sustains Defendant's motion for summary judgment on Plaintiff's KCRA claims.  *See, e.g., Williams*, 184 S.W.3d at 500 (citing *Reeves*, 530 U.S. at 148)).

The Court has reviewed the issues concerning Plaintiff's claim under Ky. Rev. Stat. Ann. § 337.285 and will set a conference to discuss the issues related to it.  After that conference the Court will resolve that claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED with respect to Plaintiff's KCRA claim and that claim is DISMISSED WITH PREJUDICE.

This is NOT a final order.

cc:     Counsel of Record